IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| KEITH BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 10-1044-CV-W-ODS |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AND OPINION REVERSING AND REMANDING
## COMMISSIONER'S FINAL DECISION

Pending is Plaintiff Keith Brown's request for review of the final decision of the Commissioner of Social Security denying his disability application.  The Commissioner's decision is reversed and remanded for further proceedings.


## I.  BACKGROUND


Brown is a 56-year-old male with a high school education and no past relevant work.  He was incarcerated from 1971 to 2005, returned to prison for a parole violation in 2006, and was released in 2008.  While imprisoned, he sustained a right tibial plateau fracture (just below the knee joint).

Brown filed his application for supplemental security income on May 13, 2008, alleging he was disabled due to arthritis in both legs, pins and plates in his right leg, and a heart condition.  At the time he filed his application, Brown was a "[p]erson closely approaching advanced age," 20 C.F.R. § 416.963(d), meaning the Commissioner was required to find him disabled if he was limited to sedentary work and his education did not provide for direct entry into skilled work.  *See* 20 C.F.R., Part 404, Subpart P, Appendix 2, Table No. 1, Rule 201.12.

Angela Garner, MD, performed a consultative examination of Brown on June 24,

2008.  Garner noted Brown had an "intermittent slight limp on his right side that was more pronounced when he attempted to walk on his heels and toes."  Brown reported he could "sit all day" but could only stand or walk 15 to 30 minutes at a time and was unable to squat due to his right lower extremity injury.  Garner wrote that she felt Brown "gave his best effort" at the examination and that he would benefit from use of a cane "especially for prolonged activity or uneven terrain."  She opined Brown was limited in "squatting, . . . bending, crouching, and climbing secondary to his right lower extremity."  She also found he was limited in his ability to sit despite Brown's report he could "sit all day"; she did not opine Brown was limited in his ability to stand despite his report he could only stand up to 30 minutes at a time.

On July 4, 2008, Karen E. Dryden, a state agency disability examiner (not a medical doctor), completed a physical residual functional capacity (RFC) assessment.  Dryden concluded Brown was capable of performing light work.  The Commissioner indicates Dryden was a "single decisionmaker" (SDM) – a disability examiner who "may make the initial disability determination in most cases without requiring the signature of a medical consultant," 71 FR 45890-01, 2006 WL 2283653 (F.R.)

The ALJ conducted a hearing on November 9, 2009.  Before Brown testified, Brown's attorney objected to any weight being given to Dryden's assessment because Dryden was not a medical doctor.  The ALJ responded his "usual policy" was to give single decisionmakers "the weight which they deserve," adding he and Brown's attorney "[were] probably in pretty close accord as to what that weight is."  Brown's attorney also raised an issue related to Dr. Garner's sitting limitation; he asserted this limitation "would more logically [be] standing," which the ALJ agreed "would make more sense."

Brown testified he typically gets up at 5:00 AM and reads and studies.  With respect to household duties, Brown stated he was responsible for cleaning his room.  Brown uses a cane (as Dr. Garner suggested) and can climb stairs "one step at a time"; squatting, bending over, standing, and lifting objects weighing more than 10 pounds

exacerbate the pain in his right leg.  He testified he takes OxyContin for pain.[1]

In addition to his testimony regarding his daily activities, Brown completed a supplemental questionnaire stating he provided care for his 77-year-old father by giving him medications, and helping him "move around and perform other necessary task[s]." Brown also stated he was also able to do the laundry, dishes, rake leaves, gardening, and do several other household tasks.  Brown additionally commented that "part of the reason" he was not working was because employers did not want to hire people convicted of serious offenses.

In denying benefits, the ALJ concluded Brown could perform "light work . . . except that the claimant is limited in his ability to squat or crouch."[2]  The ALJ determined (without a vocational expert) that there were a significant number of jobs in the national economy Brown could perform.  In reaching his conclusion regarding Brown's RFC, the ALJ discussed Brown's testimony, his supplemental questionnaire, Dr. Garner's opinion, and Dryden's (the disability examiner's) assessment.

With respect to Brown's comment in the questionnaire regarding his criminal history, the ALJ stated, "[T]he claimant's [sic] wrote that the *main reason* for why he isn't being hired is because he has criminal convictions" (emphasis added).  But Brown actually had written his criminal past was only "part of the reason" for his unemployment, not "the main reason."[3]

With respect to Dr. Garner's opinion, the ALJ gave it only "moderate weight" for

---

[1]  The OxyContin appears to have been prescribed for a bicycle crash, not Brown's knee.

[2]  "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. § 416.967(b).

[3]  The Commissioner also inaccurately depicts Brown's statements, asserting, "[Brown] . . . stated that his inability to find work was due to his felony convictions."  This leaves the impression Brown attributed his unemployment *solely* to his criminal history, but Brown never did so; he blamed his lack of work on his convictions *and* physical condition.

two reasons. First, the ALJ noted the opinion "did not contain a full residual functional capacity analysis."[4] Second, the ALJ found Dr. Garner's limitations as to sitting, bending, crouching, and climbing "appear to rely too heavily on the claimant's subjective complaints." The ALJ did not mention Brown's attorney's suggestion (from the hearing) that Dr. Garner intended to limit Brown's *standing* ability, not sitting, which the ALJ had agreed "would make more sense." Nor did the ALJ acknowledge Dr. Garner's opinion Brown would benefit from the use of a cane.

With respect to Dryden's assessment, the ALJ apparently did not remember she was a lay person (as Brown's attorney had pointed out at the hearing). The ALJ "changed Karen [Dryden] from a woman to a man, [gave] her a man's name and awarded her a medical degree." Plaintiff's Brief, p. 11. Referring to Dryden as "Kenneth E. Dryden, MD," the ALJ assigned "significant weight" to her assessment that Brown could perform light work. Further confusing the case, the ALJ also wrote that Dryden "didn't fully take into consideration the claimant's subjective complaints" and that "therefore a *sedentary* work level would be more appropriate" (emphasis added). This contradicted the ALJ's own RFC assessment limiting Brown to *light* work, with no squatting and crouching. This contradiction was never explained or reconciled by the ALJ.

## II. DISCUSSION

"[R]eview of [the Commissioner's] decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. . . . [The Court] will not reverse a decision simply because some evidence may support the opposite conclusion." *Mitchell v. Shalala*, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final decision. *Forsythe v.*

---

[4] The ALJ did not request Dr. Garner to supplement her report, nor did he order a second consultative examination.

*Sullivan*, 926 F.2d 774, 775 (8th Cir. 1991).  Substantial evidence means "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion.  *Smith v. Schweiker*, 728 F.2d 1158, 1161-62 (8th Cir. 1984).

Brown contends the ALJ's decision should be reversed because the ALJ treated Dryden (the SDM) like a medical source.  The Commissioner devotes most of a page to defeating an argument Brown did not make before conceding Dryden's RFC assessment "was not entitled to any weight."[5]

The Commissioner counters the ALJ's error was harmless.  An error of this nature is harmless if the ALJ "would inevitably have reached the same result" had he understood Dryden was not a physician.  *Dewey v. Astrue*, 509 F.3d 447, 449-50 (8th Cir. 2007).

This is not a case where the ALJ merely mentioned Dryden's opinion in passing or merely stated her report was consistent with the medical evidence.  Nor is this a case where an SDM's opinion was later affirmed by a physician.  Thinking Dryden was a medical doctor, the ALJ gave her opinion "significant" weight and relied heavily on it in denying benefits.  The Commissioner cites no case in which an ALJ's denial of benefits was held to be "inevitabl[e]" after the ALJ erroneously attributed "significant weight" to evidence that (the Commissioner concedes) "was not entitled to any weight." If such a case can exist, this is not it.

Immediately after assigning "moderate weight" to Dr. Garner's limitations,  the ALJ wrote (in discounting Dryden's assessment) that "a sedentary work level [rather than light] would be more appropriate."  This finding invites scrutiny as to how or why the ALJ ultimately arrived at a *light*-work RFC determination for Brown.[6]  And the ALJ

---

[5]  The Commissioner defends an ALJ's duty to consider "*all*" relevant evidence in making the RFC determination, including lay evidence, a requirement Brown never disputes.

[6]  Brown suggests the ALJ amended his RFC determination to light work after realizing a sedentary-work level required a finding of disability under the Medical-Vocational Guidelines.  The Commissioner does not dispute this suggestion.

completely ignored Dr. Garner's conclusion Brown would benefit from use of a cane, a functional limitation which merits attention given the requirements of some light work (frequent lifting/carrying and a good deal of walking or standing). *Cf. Love v. Commissioner of Social Sec.*, 605 F. Supp. 2d 893, 907 (W.D. Mich. 2009) (reversing RFC determination where ALJ failed to explain how claimant could carry 20 pounds while using a "'hand held assistive device'"); *see also Dewey*, 509 F.3d at 449-50 (holding similar SDM error was not harmless where record contained more restrictive medical opinion).

The Commissioner argues there is "substantial medical evidence" against Brown's claim, referencing treatment records which admittedly detract from a finding of disability. But the Commissioner fails to mention the ALJ expressly considered these records and assigned them only "limited weight." There is no reason to think the ALJ would have accorded this evidence greater significance if he knew Dryden was not a doctor; these records do not compel the conclusion the ALJ "inevitably" would have found Brown capable of light work.

The Court can only speculate whether the ALJ would have found Brown capable of light work – rather than sedentary work – knowing Dryden was not a physician. This distinguishes Plaintiff's case from those cited by the Commissioner. *See, e.g.*, *Northern v. Astrue*, No. 10-2-DLB, 2011 WL 720763, at *5 (E.D. Ky. Feb. 22, 2011).


III. CONCLUSION


This case is reversed and remanded for reconsideration of Brown's disability application. A consultative examination may be arranged if the ALJ determines Brown's medical records provide insufficient medical evidence about his impairments.
IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
DATE: July 18, 2011                      UNITED STATES DISTRICT COURT